KEELEY INSTITUTE COMPANY OF WEST MICHIGAN *v.*
SHAW.

1. LANDLORD AND TENANT — LEASE—ASSIGNMENT — RIGHT TO RE-
PAIRS.

Where a lessee, by agreement separate from the lease, has a
right to have made certain repairs and improvements, such
right may pass by parol to an assignee of the lease, provided
such be the intent of the parties to the assignment.

2. SAME—FAILURE TO REPAIR—ACTION—EVIDENCE.

In an action by the assignee of a lease against the lessor for
damages for failure to repair as agreed with the lessee by an
agreement separate from the lease, the transaction between
the lessee and the assignee is competent to show whether the
rights to have repairs made were included, and it is imma-
terial whether the lessor was present, or a party to that
bargain, she having consented to the transfer of the lease.

3. SAME—AGREEMENT TO REPAIR—PERFORMANCE—EFFECT.

Where an agreement of a lessor to repair and improve has
been performed and performance accepted by the lessee, there
is no further claim and no right to repairs passes to an as-
signee of the lease.

4. SAME—ACTION—DECLARATION.

Where a lessee of premises had a right by agreement separate
from the lease to have performed certain repairs and im-
provements, and plaintiff acquired those rights by parol at
the time of taking an assignment of the lease, a declaration
alleging that plaintiff acquired such right by the assignment
of the lease should not be so strictly construed as to exclude
proof of the parol transfer.

5. SAME—RIGHT TO REPAIRS—ASSIGNMENT OF LEASE—EFFECT.

Where a lessee has, by an agreement separate from the lease, a
right to have made certain repairs and improvements, such
right does not pass by an ordinary assignment of the lease,
but may pass by agreement, and an instruction that all the
rights of the lessee passed by the assignment whether such
was the intention of the parties or not, is erroneous.

6. SAME—CONTRACT FOR REPAIRS—MERGER IN LEASE.

A contract by a landlord to make certain repairs and improve-

ments upon the leased premises does not merge in the lease subsequently executed, where the lease does not contain the substance of the contract for repairs, nor refer to it in any way.

7. SAME—SEPARATE AGREEMENT—RIGHTS OF ASSIGNEE.

Though an agreement to repair not contained in the lease is a separate collateral agreement, which does not run with the land, the whole transaction between the lessee and his assignee may be considered on the question of the transfer of the right to repairs, under the rule that where several instruments are made between the same parties at the same time they form one entire contract and are to be construed together as one transaction.

Error to Kent; Perkins, J.  Submitted June 19, 1907. (Docket No. 70.)   Decided September 20, 1907.

Assumpsit by the Keeley Institute Company of West Michigan against Louise B. Shaw for breach of contract to repair.   There was judgment for plaintiff, and defendant brings error. Reversed.

*Butterfield & Keeney*, for appellant.

*Carroll & Nichols* (*George E. Nichols*, of counsel), for appellee.

HOOKER, J.  The defendant, being the owner of a building, had negotiations, through her agents, with one Pritchard, regarding the leasing of the same to him, to be used as a " gold cure " establishment, or sanitarium. The negotiations were through correspondence, and on August 15, 1900, Tuttle Bros., defendant's agents, wrote to Pritchard that if he would take a lease of the premises for three years, with the privilege of two years more, at a rental stated, the defendant would make certain specified repairs and improvements to the premises. August 25th, Mr. Pritchard answered stating terms upon which he would take such lease.   It was a substantial acceptance of Tuttle Bros.' offer, except that it fixed a definite time for the commencement of the lease, and

specified in more detail the repairs and improvements to be made. Thereupon the defendant authorized her agents to contract for such repairs and improvements, and a lease in duplicate, signed by them in her behalf, was sent to Pritchard, with notice of her acceptance of his offer, who executed and returned one or both copies of the lease. It was an ordinary lease, in which no mention was made of the agreement underlying it, upon which the lessee's consent to accept the lease was based. Rent began October 1, 1900. The work was contracted for by defendant, and much of it was done.

Pritchard conducted the business contemplated until about January 19, 1901, when the plaintiff corporation was organized to take the business, in consequence of negotiations with Pritchard, which had resulted in an agreement to transfer his interest in the business and to assign his lease. This arrangement was carried out. The assignment of the lease was as follows: " I hereby assign this lease to the Keeley Institute Company of West Michigan." It was upon the back of the lease, upon which the defendant placed her consent to the transfer, and plaintiff placed its acceptance of the terms of said consent.

All of the correspondence leading up to the making of the lease was delivered with the lease to the plaintiff's organizers during the negotiations with Pritchard, and there is testimony tending to show that they acquired all the rights to repairs, etc., that Pritchard had at that time. Plaintiff remained upon the premises during the remainder of the three years, and elected to extend the lease according to its terms. A controversy arose over the question of defendant's further obligation to make repairs, which culminated in the bringing of this action for damages, in which plaintiff recovered a judgment for $1,290, and defendant has appealed.

Among other claims of the defendant, it is asserted by counsel, that,—

1. This agreement to repair was no part of the lease,

and rights under such agreement did not pass with the lease by virtue of the assignment, but remained in Pritchard, if there were any such rights remaining.    Therefore there was no privity between the parties, and a verdict should have been directed for the defendant upon that ground.

2. That prior to the assignment of the lease defendant had substantially performed her promise, by making the repairs, etc., agreed upon, that she had varied them in some particulars, but that this was upon the request of Pritchard, who accepted all of such as were made, as satisfactory.    Pritchard so testifies, and further that all were completed, except the veranda and the sodding of the lawn, which the parties agreed before signing the lease should be put off until the following spring.    This work was afterwards done.

Counsel say that these facts appear by the uncontradicted testimony of Pritchard and others, and that the plaintiff therefore acquired no rights under the agreement to repair, except as to the veranda and yard work which was performed, and therefore the court should have directed a verdict for defendant.

3. There are many questions arising upon rulings, which need not be stated here.

If it be conceded that the preliminary contract was separate from the lease of the premises, no one claims that it was any the less binding, or that rights under it could not be acquired in it by the plaintiff, without so providing in the assignment of the lease.   As in the case of the first transaction, the second involved more than the assignment of the lease.    The right to carry on the business in western Michigan was included.    How that was transferred from Pritchard we need not inquire.    Its transfer, like the assignment of the lease, was an incident in the performance of the agreement.    We understand that defendant's counsel do not claim that failure to include said contract in the assignment of the lease is conclusive of the question, except as it is coupled with the

claim that there was no other evidence of such transfer, and perhaps could not be, under the terms of the declaration, which is said to allege that it passed by that assignment.

We are of the opinion that rights under that contract, if there were any remaining in Pritchard, might pass by parol, if such were the intention of the parties, and that there is testimony in the case which made it a question for the jury. It need not be stated here, and it is sufficient to say that it will be found in the testimony of Beckwith and the cross-examination of the defendant.

In this connection we allude to some assignments based on questions relating to the contract between Pritchard and the plaintiff. That transaction was competent to show whether rights to repair were included, and it was of no consequence whether defendant was present, or a party to that bargain, because it in no way depended upon her consent. The transfer of the lease did. She consented to that, and defendant had a right to acquire Pritchard's existing rights to improvements, under another contract.

It is true, as claimed by the defendant, that if the contract to repair and improve had been performed, and such performance had been accepted as a full performance of the whole or the particulars in which it had been performed, a right to further claim was thereby lost, and could not be acquired. The court could not safely have directed a verdict for the defendant. As to the declaration we think that it should not be so strictly construed as to exclude proof of such a transfer.

The instruction of the learned circuit judge concluded the question, for he instructed the jury that the lease and the preliminary contract were both parts of one transaction, and must be construed together, and that all rights in both passed under the assignment of the lease. Hence they could not avoid finding that whatever rights Pritchard had were assigned with the lease, whether that was the agreement and intention of the parties or not. That

the preliminary agreement was a valid contract when made does not admit of a doubt. Had Pritchard afterwards refused to execute the lease, defendant would have had a cause of action upon the contract. After he signed the lease his right of action for a failure to repair in case of a failure by defendant, would depend not upon the lease, but upon the contract.

This contract was not merged in the lease, which neither contains its substance, nor refers to it in any way. Neither is the lease in any way inconsistent with its continuance as a valid binding obligation of the parties.

Counsel for the defendant have cited many cases to the proposition that such are separate collateral contracts, and we list some of them in our opinion, without discussion: *Angell* v. *Duke*, L. R. 10 Q. B. 174; *Clenighan* v. *McFarland*, 16 Daly (N. Y.), 402; *Hoby* v. *Roebuck*, 7 Taunt. 157; *Morgan* v. *Griffith*, L. R. 6 Exch. 70; *Erskine* v. *Adeane*, L. R. 8 Ch. App. 756; *McGrath* v. *City of Boston*, 103 Mass. 369; *Close* v. *Railway Co.*, 64 Iowa, 149; *Tillman* v. *Fuller*, 13 Mich. 123; *Whiting* v. *Ohlert*, 52 Mich. 462.

Counsel for the plaintiff insistently urge the application of the rule that where several instruments are made between the same parties at the *same* time they form one entire contract and are to be construed together as one transaction, a rule as well settled as any in our jurisprudence. All such may be read together to ascertain the interpretation to be put upon any of them, if it is uncertain. That is no more than interpreting an instrument in the light of the surrounding circumstances.

There are many other assignments of error relating to the admission of evidence. They will not necessarily arise upon another trial, and we think it unnecessary to discuss them.

The judgment is reversed, and a new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.